IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| **CRAWFORD, R.** )<br>individually and on behalf )<br>of all others similarly situated, )<br> )<br>Plaintiff, )<br> )<br>v. )<br> )<br>**CERNER CORPORATION,** )<br> )<br>Defendant. ) | Case No.: 4:17-cv-00015-RK |

## PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO APPROVE SETTLEMENT

Named Plaintiff, Rhonda Crawford ("Named Plaintiff"), and Defendant, Cerner Corporation ("Cerner"), jointly request that the Court enter an Order approving their settlement of a bona fide dispute over entitlement to overtime wages under the Fair Labor Standards Act ("FLSA"). The terms of the Settlement Agreement are fair, reasonable, and beneficial to Putative Collective Class Members. The Settlement creates a common Settlement Fund of $235,000 to cover a putative class of 79 persons who were employed by Cerner as Technical Support Analysts in Cerner's SolutionWorks organization and/or Technical Solution Analysts in Cerner's SolutionWorks and/or Application Management Services organizations (collectively, "TSAs") from January 12, 2014 to the present and who were classified as exempt from overtime wages, but expressly excluding any such individual who has executed an agreement with Cerner to submit any disputes regarding their employment to binding arbitration. Putative Collective Class Members who do not consent to join the Settlement will not release their claims or be bound by any judgment. Further, any amount not claimed by a Putative Collective Class Member will be reallocated to Participating Collective Class Members who do chose to participate, and will not

revert to Defendant. For the reasons detailed below, the Court should readily approve the Settlement Agreement.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 12, 2017, Named Plaintiff commenced this action against Defendant seeking to represent the Putative Collective Class Members. (Dkt. # 1.) Named Plaintiff's Complaint asserted claims for unpaid overtime under the Fair Labor Standards Act ("FLSA") and Missouri Minimum Wage Law ("MMWL"). Specifically, Named Plaintiff alleged that she and the Putative Collective Class Members were improperly classified as exempt from overtime wages.

On February 16, 2017, Defendant timely answered Named Plaintiff's Complaint, denying Named Plaintiff's allegations, and asserting its affirmative and other defenses. (Dkt. # 8.)

Defendant denies any liability or wrongdoing of any kind associated with the claims alleged in the Litigation, and further contends that, for any purpose other than settlement, this action is not appropriate for class or collective action treatment. Defendant contends, among other things, that it has complied at all times with the FLSA and state law.

Class Counsel served interrogatories and requests for production of documents aimed at gathering information about both the alleged commonalities amongst Putative Collective Class members and the nature of their primary duties. In response, Defendant produced over 40,000 pages of material relating to TSA's training, duties, hours, qualifications, emails, and other employment records. Class Counsel reviewed all of these documents, and also responded to Defendant's discovery requests, served on both Plaintiff Crawford and Opt-in Plaintiff Wendolyn Milton. (*Id.*)

The parties mediated the case on June 8, 2017, before Jill Morris of this Court's MAP program. Class Counsel prepared a damages model for mediation based on the hours recorded

2

and pay received by each of the Putative Collective Class members. (*Id.*) Further, Class Counsel prepared mediation briefing which was shared with opposing counsel and Ms. Morris. (*Id.*) The mediation was held at arm's length. (*Id.* at ¶ 4.) At mediation, after lengthy negotiations, the Parties were able to mutually resolve the claims of Named Plaintiff and the Putative Collective Class Members.

Named Plaintiff and Class Counsel believe the claims asserted in the Litigation have merit and that the evidence developed to date supports the claims asserted. Named Plaintiff and Class Counsel, however, also recognize the risk, length, and expense of continued proceedings necessary to prosecute the Litigation through trial and appeal, particularly in complex cases like this action, and believe that the Settlement will confer substantial benefits upon Putative Collective Class members who choose to participate.

Defendant denies Named Plaintiff's claims in their entirety and denies any wrongdoing, but wishes to avoid the uncertainty and risk attendant with litigation.

The main terms of the Settlement Agreement are as follows:

- The Settlement pays each of the 79 AMS Delivery Consultants who choose to participate their pro rata share of a Settlement Fund of $235,000, after payment of attorneys' fees and costs and the Service Award to the Named Plaintiff and Opt-In Plaintiff who provided assistance in prosecuting the case and reaching settlement.

- Class members who submit a timely Consent to Join Form ("Participating Collective Class Members") will receive their pro rata portion of the Settlement Fund based on the number of hours worked during the Class Period.

- All Participating Collective Class Members who choose to claim their share of the Settlement Fund by submitting a timely and valid Consent to Join Form will release any state and federal wage and hour claims during the Class Period in return for receiving payment from this Fund.

- Putative Collective Class Members who do not affirmatively choose to participate in the Settlement will not release any claims and will not receive any payments under the terms of the Settlement.

- Class Counsel's attorneys' fees and costs shall be paid from the Settlement Fund. Attorneys' fees will not exceed one-third of the gross Settlement Fund, plus reasonable costs of $4,362.47.

- Named Plaintiff will receive a Service Award of $5,000, and early Opt-In Plaintiff Wendolyn Milton will receive a Service Award of $2,500, for service to the class.

The Settlement Agreement is attached to the Motion as Exhibit A.

## **ARGUMENT**

### I.     Approval of the Settlement Agreement Is Warranted

The Court should approve the Settlement Agreement because it is the product of contested litigation, is a compromise of disputed issues, and is fair and reasonable. It was reached after arm's-length negotiations by experienced counsel and provides meaningful, significant monetary relief to all Participating Collective Class Members.

An FLSA collective action is not a class action: participating individuals affirmatively choose to be bound and represented by counsel, and there are no absent class members whose claims are being settled. *See Brown v. Money Tree Mortgage, Inc.*, 222 F.R.D. 676, 678 (D. Kan. 2004); *Clougherty v. James Vernor Co.*, 187 F.2d 288, 290 (6th Cir. 1951). As such, the reasons for judicial scrutiny of class action settlements are not present in FLSA opt-in settlements, like the Settlement at bar, because absent class members are not bound by the outcome. *Maguire v. Trans World Airlines, Inc.*, 55 F.R.D. 48 (S.D.N.Y. 1972); *Wagner v. Loew's Theatres, Inc.*, 76 F.R.D. 23 (M.D.N.C. 1977). Nonetheless, settlement of an FLSA collective action generally requires Department of Labor or court approval because private settlements will not effectuate a valid release for the employer. *McClean v. Health Sys., Inc.*, 2014 WL 3907794, at *3 (W.D. Mo. Aug. 11, 2014) (citing *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

The standard for court approval of an FLSA settlement is straightforward: a district court

4

"must find that: (1) the litigation involves a bona fide wage and hour dispute; (2) the proposed settlement is fair and equitable to all parties concerned; and (3) the proposed settlement contains an award of reasonable attorneys' fees." *McClean*, 2014 WL 3907794, at *3 (W.D. Mo. Aug. 11, 2014) (internal citation omitted). These factors are present here.

### A. The Litigation Involves a Bona Fide Wage and Hour Dispute

"To demonstrate the existence of a bona fide dispute, the parties should provide the district court with":

> (1) a description of the nature of the dispute (for example, a disagreement over coverage, exemption or computation of hours worked or rate of pay); (2) a description of the employer's business and the type of work performed by the employees; (3) the employer's reasons for disputing the employees' right to a minimum wage or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage.

*Stewart v. USA Tank Sales & Erection Co.*, 2014 WL 836212, at *2 (W.D. Mo. Mar. 4, 2014) (internal citation omitted).

This Litigation involved a dispute over whether Defendant improperly classified Named Plaintiff and Putative Collective Class Members as exempt from overtime under the FLSA's administrative, computer, or combination exemptions. Defendant, a provider of health information technology solutions and services, contends that Named Plaintiff and Putative Collective Class Members are exempt, in part, because they exercise discretion and independent judgment with respect to matters of significance and perform work that meets the requirements of the computer or administrative exemptions, or a combination of those exemptions. Named Plaintiff, who worked as a TSA for Defendant, alleges that the work of TSAs is non-exempt because their primary duty was to remotely troubleshoot Cerner clients' tickets, in the vein of a

non-exempt helpdesk employee.

Throughout the Litigation, the Parties have vigorously advocated for their respective and opposite positions. Named Plaintiff initiated the action against Defendant, which provides assurance of an adversarial context, *Lynn's Food Stores,* 679 F.2d at 1354; in response, Defendant denied Named Plaintiff's claims, asserted affirmative defenses of the FLSA's overtime exemptions and other defenses, and continues to deny any wrongdoing or liability. *See Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 408 (D. Md. 2014) ("In deciding whether a *bona fide* dispute exists as to a defendant's liability under the FLSA, courts examine the pleadings in the case, along with the representations and recitals in the proposed settlement agreement."). Both sides have produced numerous documents and have argued that the facts and law support their conclusions. Finally, the Parties disputed the accuracy of the method for determining the hours worked by Putative Collective Class members, the proper computation of their damages for unpaid overtime wages (Plaintiff's computation was approximately three times higher than Defendant's) and the number of hours worked by Putative Collective Class members.

### B. The Settlement Is Fair and Reasonable

"To determine whether an FLSA settlement is fair and equitable, courts" consider:

> (1) at what stage of the litigation the settlement was reached, and the complexity, expense, and likely duration of the remaining litigation; (2) how the settlement was negotiated, *i.e.,* whether there are any indicia of collusion; (3) class counsel, the parties, and the class members' opinions about the settlement; and (4) whether the present value of the settlement outweighs the potential recovery after continued litigation.

*McClean*, 2014 WL 3907794, at *3 (W.D. Mo. Aug. 11, 2014) (internal citations omitted).

Here, settlement was reached after the Parties had conducted significant discovery. Namely, Defendant produced and Class Counsel reviewed over 40,000 pages of material.

(Named Plaintiff and Opt-In Plaintiff also produced a significant number of documents in response to Defendant's discovery requests.) This developed record renders resolution at this stage of litigation appropriate. *See Nyazee v. MBR Mgmt. Corp.*, 2016 WL 126363, at *2 (E.D. Mo. Jan. 12, 2016) (settlement appropriate after extensive discovery and mediation); *Brown v. Reddy ICE Corp.*, 2016 WL 2930933, at *3 (E.D. Mo. May 19, 2016) (same).

At the same time, settlement at this stage eliminates the very real and inherent risks both sides would bear if this complex case continued toward resolution on the merits. Serious questions of fact and law, particularly in the context of the relatively untested computer-employee exemption, placed the ultimate outcome of the Litigation in doubt. In addition, Named Plaintiff would face the hurdle of keeping this class together through decertification. Finally, litigation would have presented a challenge in determining the appropriate method to calculate damages. The parties disagree as to whether Defendant's time keeping application truly captures all time employees worked and Defendant argues that Putative Collective Class members' salary was intended to compensate them for all hours worked, including overtime, and as such only a half-time premium is owed (if any).

Second, the Litigation was contested and settled through mediation with a skilled mediator, Jill Morris. The Parties were only able to reach a resolution after significant data analysis and shuttle diplomacy via the mediation process. Moreover, because the unclaimed portion of the Settlement Fund is reallocated to Participating Collective Class Members, not to Class Counsel's attorneys' fees or back to Defendant, there is no indicia of collusion. *See Stewart*, 2014 WL 836212, at *6 (W.D. Mo. Mar. 4, 2014).

Third, the Parties believe the Settlement Agreement is fair and reasonable. Both Parties are represented by counsel experienced in complex wage and hour litigation. Class Counsel is

fully aware of the factual contentions of its clients, as well as the Defendant's contentions, and is in the best position to opine as to whether this Settlement produces fair results after consideration of risks. *See In re BankAmerica Corp. Securities Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery") (citations omitted). The Settlement offers a significant payment to Participating Collective Class Members. These awards will be determined based on their actual hours worked and actual wages earned during the Class Period. After attorneys' fees and costs, the projected average payment for Participating Collective Class Members is meaningful: $1,888.29 – with individuals who worked the entire class period receiving far higher. Given this value, Class Counsel believes that the Settlement Agreement achieves a fair result.

Finally, the present value of the Settlement outweighs the potential recovery after continued litigation. If the Court does not approve this Settlement, any recovery through the Litigation may not occur until after years of litigation, including possible appeals. Of course, it is also possible that the Putative Collective Class members would receive nothing should the Litigation proceed through summary judgment or trial. For these reasons, approval of this Settlement is highly favored. *See, e.g., In re BankAmerica*, 210 F.R.D. at 701 ("As courts have recognized, when considering settlement agreements they should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush."); *see*

*also Lynn's Food Stores*, 679 F.2d at 1354 (public policy encourages settlement of FLSA litigation); *Little Rock School District v. Pulaski Cnty. Special School District No. 1*, 921 F.2d 1371, 1388 (8th Cir. 1990) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor.").

Based on these factors, the Parties respectfully request that this Court approve the Settlement and order that Named Plaintiff and Participating Collective Class Members be paid in accordance with the terms of the Settlement Agreement.

### C. The Service Award Is Reasonable

In addition to unpaid overtime wages for the Class Period, the Settlement Agreement provides that Named Plaintiff, Rhonda Crawford, will receive a Service Award of $5,000 and Opt-In Plaintiff Wendolyn Milton will receive a Service Award of $2,500. Several factors compel the conclusion that this payment is reasonable. Ms. Crawford and Ms. Milton were actively involved in the litigation; they "(1) provided information to Class Counsel for the Complaint and other filings; (2) reviewed pleadings and other documents; (3) communicated on a regular basis with Class Counsel and kept informed of progress in the litigation and settlement negotiations; (4) provided declarations in support of conditional certification; (5) and Ms. Crawford attended the mediation and approved the Settlement." *Lees v. Anthem Ins. Companies Inc.*, No. 4:13CV1411 SNLJ, 2015 WL 3645208, at *4 (E.D. Mo. June 10, 2015) (citing cases awarding $20,000-$25,000 incentive awards) (noting that such involvement warranted a $10,000 incentive award); *Tussey v. ABB, Inc.*, 06-04305-CV-C-NKL, 2012 WL 5386033 (W.D. Mo. Nov. 2, 2012) (approving $25,000 service awards for the three class representatives); *Wolfert v. UnitedHealth Group, Inc.,* No. 4:08CV01643(TIA), at *4 (E.D. Mo. Aug. 21, 2009) (approving an incentive award of $30,000); *Matheson v. T-Bone Rest.*, LLC, 2011 WL 6268216, at *9

(S.D.N.Y. Dec. 13, 2011) (approving $45,000 service award to named plaintiff in tip pool/OT case settlement after two and a half years of litigation); *Mentor v. Imperial Parking Sys., Inc.*, 2010 WL 5129068, at *5 (S.D.N.Y. Dec. 15, 2010) (approving $40,000 service award to named plaintiff in FLSA settlement after five years of litigation); *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (approving $30,000 service award to named plaintiff in FLSA settlement after three years of litigation); *Flores v. Anjost Corp.*, 2014 WL 321831, at *9 (S.D.N.Y. Jan. 29, 2014) (approving $25,000 service awards for five named plaintiffs in FLSA settlement after three years of litigation); *Duchene v. Michael Cetta, Inc.*, 2009 WL 5841175, at *3 (S.D.N.Y. Sept. 10, 2009) (approving $25,000 service award to named plaintiff in tip pool case settlement after three years of litigation); *Capsolas v. Pasta Res. Inc.*, 2012 WL 4760910, at *9 (S.D.N.Y. Oct. 5, 2012) (approving $20,000 service award for named plaintiff in tip credit case settlement after two years of litigation).

The Service Award also compensates Named Plaintiff for assuming significant risk by bringing the case in her name, given the potential liability for Defendant's costs if the case failed. *See Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 876-77 (7th Cir. 2013). Named Plaintiff also solely bore the risks unique to bringing suit in her name against a former employer. *Chambery v. Tuxedo Junction Inc.*, 2014 WL 3725157, at *11 (W.D.N.Y. July 25, 2014) (stating that "[incentive] awards are particularly appropriate in the employment context [where] the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers" and finding that payments amounting to 5% of the total settlement fund are reasonable).

In addition, "the degree to which the class has benefited from [Named Plaintiff's] actions" warrants the Service Award. *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). Here, Ms. Crawford and Ms. Milton have secured payments to Participating Collective Class Members that average over $1,850.

## II. Named Plaintiff's Application for Attorneys' Fees and Costs Is Reasonable

Named Plaintiff requests one-third of the Settlement Fund for payment as attorneys' fees, and an award of $4,362.47 in reasonable costs. As detailed below, such fees and expenses are reasonable. A complete list of the expenses incurred in this case is attached to the Motion as Exhibit B.

The Supreme Court has expressed a preference that the parties agree to the amount of the fee: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Here, Defendant has agreed that it will not oppose Plaintiff's application for attorneys' fees and costs in this amount. The Parties in this matter have agreed to a common-fund settlement. When a settlement yields a common fund for class members, fees must be paid from the recovery. *Boeing Co. v. VanGemert*, 444 U.S. 472, 481 (1980). This common-fund doctrine is firmly rooted in case law. *See, e.g.*, *Trustees v. Greenough,* 105 U.S. 527 (1882); *Central R. & Banking Co. v. Pettus,* 113 U.S. 116 (1885); *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).

"In the Eighth Circuit, use of a percentage method of awarding attorneys' fees in a common-fund case is not only approved, but also 'well-established.'" *In re Xcel Energy, Inc. Sec. Derivative & ERISA Litig.,* 364 F.Supp.2d 980, 991 (D. Minn. 2005). Indeed, courts in this Circuit routinely approve and apply the "percentage-of-the-fund" approach in awarding attorneys' fees in common-fund cases. *See, e.g., Johnston v. Comerica Mortg. Corp,* 83 F.3d

11

241, 245-7 (8th Cir. 1996) (approving the percentage method as one method of awarding fees); *Petrovic v. AMOCO Oil Co.,* 200 F.3d 1140, 1157 (8th Cir. 1999); *In re U.S. Bancorp Litig.,* 291 F.3d 1035, 1038 (8th Cir. 2002); *In re Xcel Energy,* 364 F. Supp. 2d at 993.

The percentage method makes good sense for several reasons. First, contingent fee attorneys are customarily compensated on a percentage-of-the-fund method and because percentage fees reward efficiency. Second, the percentage method incentivizes Class Counsel to effectuate the maximum possible recovery under the circumstances. *See In re Xcel Energy,* 364 F.Supp.2d at 993, 996; *Kirchoff v. Flynn,* 786 F.2d 320, 325-26 (7th Cir. 1986). Third, the percentage method decreases the burden imposed on the court by the "lodestar" method[1] and assures that class members do not experience undue delay in receiving their share of the settlement. Based on these reasons, courts, including the Eighth Circuit, routinely recognize that using a percentage-of-the-fund approach most closely aligns the interests of the lawyers with the class.[2]

While "[t]he Eighth Circuit has not set forth a specific percentage benchmark to analyze the reasonableness of attorneys' fees under the percentage-of-the-fund method," courts in this

---

[1] Class Counsel maintains contemporaneous records of the time spent on their wage and hour cases and will provide lodestar information to the Court upon request.

[2] *See Johnston v. Comerica Mortgage Co.*, 83 F. 3d 241, 244 (8th Cir. 1996) (noting that the percentage-of-the-benefit approach has been recommended in common-fund situations); *see also Stoneridege Inv. Partners LLC v. Charter Communs., Inc. (In re Charter Communs., Inc.)*, 2005 U.S. Dist. LEXIS 14772, 40-42 (D. Mo. 2005). Moreover, other circuits express "a preference for the percentage of the fund method" in class actions. *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995); *see also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3rd Cir. 1998) ("[t]he percentage-of-recovery method is generally favored in cases involving a common fund"); *Swedish Hospital Corp v. Shalala,* 1 F.3d 1261, 1269, 1272 (D.C. Cir. 1993) ("concluding that a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fee award in common fund cases" and that "a percentage of the fund approach more accurately reflects the economics of litigation practice … and most closely approximates the manner in which attorneys are compensated in the marketplace for these types of cases"); *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) ("the percentage of the fund approach is the better reasoned in a common fund case"); *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998) (the percentage-of-the-fund is "a method of more closely aligning the lawyer's interests with those of his client by giving him a stake in a successful outcome"); *Prudential Ins. Co.*, 148 F.3d at 333 (the percentage of the fund approach "rewards counsel for success and penalizes it for failure") (citation omitted).

12

Circuit "have frequently awarded attorneys' fees between twenty-five and thirty-six percent of a common fund in class actions." *Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1064 (D. Minn. 2010) (quoting *In re U.S. Bancorp Litig.,* 291 F.3d 1035, 1038 (8th Cir.2002) (affirming fee award representing 36% of the settlement fund as reasonable)); *In re Xcel,* 364 F.Supp.2d at 998 (collecting cases demonstrating that district courts routinely approve fee awards between 25% and 36%); *Stewart*, 2014 WL 836212, at *8 (W.D. Mo. Mar. 4, 2014) (stating that an attorneys' fee award equal to one-third of the money recovered by the class is reasonable); *Hamilton, et al. v. ATX Services Inc.*, Case no: 08-0030-SOW (W.D. Mo. May 6, 2008) (order under seal approving attorneys' fees and expenses at 34% of fund) (dkt. # 30); *Hernandez v. Texas Capital Bank*, Case No. 07-0726-ODS, dkt. # 107 (W.D. Mo. July 14, 2009) (approving 33% of fund) (Smith, J.); *Busler v. Enersys Energy Products Inc., Case* No. 09-0159, dkts. ## 111 & 120 (W.D. Mo.) (same) (Gaitain, J.); *Osby v. Citigroup, Inc.,* Case No. 5:07-06085-NKL, Doc. 128 (W.D. Mo. June 22, 2009) (same) (Laughrey, J.); *Burks*, Case No. 4:09CV1302 (MLM) (E.D. Mo. Jan. 31, 2011) (dkt. # 91, p. 3, ¶ 8 & dkt. # 102, p. 4, ¶ 9) (approving 33 1/3% attorneys' fee award in call center wage and hour claim); *Wolfert*, Case No. 4:08CV1643 (TIA) (E.D. Mo. Oct. Aug. 21, 2009) (dkt. # 37, p. 2 & dkt. # 38, p. 4, ¶ 9) (approving attorneys' fee award of 33% of the maximum gross settlement amount in call center overtime claim); *Carlson,* 2006 WL 2671105, at *8, 2006 U.S. Dist. LEXIS 67108, at *22 (approving fee award of $5,325,000 representing 35.5% of the of the $15,000,000 settlement fund); *Morak, et al. v. CitiMortgage, Inc.*, Case No. 07-1535 (E.D. Mo. Sep. 26, 2008) (dkt. # 30) (order under seal approving fees and expenses at 33%), *Staton v. Cavo Communications, Inc.*, Case No. 08-0273 (E.D. Mo. Mar. 30, 2009) (order approving attorneys' fees and expenses at 33%) (dkt. # 40); *Perry v. National City Bank*, Order Approving Settlement, Attorneys' Fees

and Service Awards, Case No. 3:05-CV-00891-DRH-PMF (S.D. Ill. March 3, 2008) (approving requests for attorneys' fees and costs in the amount of 33% of the settlement fund); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005) (approving fee award of 38.26% of total settlement fund in FLSA collective action and Rule 23 class action case).

Here, Defendant has agreed not to oppose attorneys' fees of up to one-third of the Settlement Fund in addition to reasonable costs. This percentage is well within the reasonable range of attorneys' fee awards. Indeed, the representation agreement between Class Counsel and Named Plaintiff is for a fee of one-third as well as recovery of costs. All Putative Collective Class members will be informed through their Notice of the amount awarded to Class Counsel. The proposed Notice is attached as Exhibit C. Any Putative Collective Class members who disagree with this compensation may decline to join the suit and hire another attorney to prosecute their claims. Finally, Class Counsel's costs, as shown in Exhibit B, are reasonable and necessary for Class Counsel to achieve the favorable result for the class.

In sum, Named Plaintiff requests that this Court award Class Counsel attorneys' fees of one-third of the Settlement Fund and reasonable costs.

## CONCLUSION

The Settlement presented is an immediate, real, substantial, and fair settlement. Named Plaintiff, therefore, respectfully request that the Court approve the Settlement in whole and without delay, approve Plaintiff's petition for fees and costs, and dismiss the case with prejudice.

Dated this 17th day of August, 2017

>Respectfully submitted,
>
>/s/ Eric L. Dirks
>**WILLIAMS DIRKS DAMERON LLC**
>Eric L. Dirks
>1100 Main Street, Suite 2600
>Kansas City, Missouri 64105
>dirks@williamsdirks.com
>
>**HABUSH HABUSH & ROTTIER, S.C.**
>Daniel A. Rottier
>Jason Knutson
>Breanne L. Snapp
>150 East Gilman Street, Suite 2000
>Madison, Wisconsin 53703
>rottier@habush.com
>jknutson@habush.com
>bsnapp@habush.com
>
>
>*Attorneys for the Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2017, the foregoing was filed with the Clerk of the Court using the CM/ECF system which gives electronic notice to all counsel of record.

>/s/ Eric L. Dirks
>Eric L. Dirks

15

Case 4:17-cv-00015-RK    Document 36    Filed 08/17/17    Page 15 of 15